ORIGINAL                                                                                                    ORIGINAL

Paul McCarthy
Cal Bar No. 139497
2023 Folsom #6
San Francisco, CA 94110-1335
telephone: (415) 702-7260
email: p_mccarthy@sbcglobal.net

Attorney for *Plaintiff*
MARGARET EVE-LYNNE MIYASAKI

United States District Court
Northern District of California
San Jose Courthouse

| | |
|---|---|
| MARGARET EVE-LYNNE MIYASAKI,<br><br>    *Plaintiff*,<br>    vs.<br><br>KYNA TREACY, dba Kini Bikini, kinibikini.com, kinibikini.com.au, shopkinibikini.com,<br><br>    *Defendant*. | No. **CV 12 4427 EJD**<br><br>PLAINTIFF'S SEPARATE TRIAL SETTING STATEMENT |

**PLAINTIFF'S SEPARATE TRIAL SETTING STATEMENT**

Plaintiff has been advised that defendant filed a separate trial setting statement since no joint trial setting statement could be agreed upon by 5:00 today.  Plaintiff is therefore filing a separate trial setting statement.  If the court wants a joint trial setting statement, plaintiff will cooperate with defendant.

**1. Jurisdiction.**

This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331, commonly known as federal question jurisdiction, because Plaintiff's claims are based on alleged violations of 17 U.S.C. § 501 et seq.  Defendant has not asserted any counterclaims in this matter.

**2. Substance of the action.**

Plaintiff is an artist who, among other things, has developed a series of crochet wearable art and marketed such art under her wearable art business, Hawaiian Delights Crochet Bikinis. Plaintiff's wearable art works were not mass-marketed but marketed as custom made and fit to

ORIGINAL                                                                                          ORIGINAL

order. Plaintiff created various lines of wearable art, each of which contained bikinis and resort wear within that line.  One of the lines plaintiff created was called "Verdant Garden", and within that style, plaintiff created three works, a Verdant Garden crochet bikini, and two versions of a Verdant Garden dress, a "full skirt" and a "narrow skirt" dress.  The Verdant Garden art work at issue here is the Verdant Garden narrow skirt dress. This wearable art was created and produced by crochet / lace stitch techniques, and incorporates a unique crochet / lace stitch pattern that is primarily aesthetic, and that it is separable from the functional aspects of the wearable art.  The Verdant Garden narrow skirt dress was first published in 2000 in an newspaper article by the Honolulu Star-Advertiser and was publicly introduced in 1998 in a fashion show that exhibited both the full skirt and narrow skirt dress.  As this is a work of art, it did not have to be registered under the federal Copyright Act, but simply published. Plaintiff further claims that defendant infringed the copyright by manufacturing, causing to be manufactured, distributing, offering for sale and/or selling, without Plaintiff's consent, articles of clothing incorporating or attempting to incorporate Plaintiff's unique crochet / lace stitch pattern, and by manufacturing, distributing, offering for sale, and/or selling

     Defendant operated an on-line crochet bikini and other related crochet fashion store doing business as Kini Bikini.  She advertised and sold various crochet item from 2008 to 2011 and had an online store and catalog offering these items for sale during that period of time. Since Australia is in the Southern Hemisphere, summers run between two calendar years; thus, Kini Bikini had three catalogs during this time, summer 2008-2009, summer 2009-2010, and summer 2010-2011.  During this time, defendant advertised, in the 2008-2009 catalog, copies of Verdant Garden designated "Miami knit dress" which was displayed in three colors, black, red, and white, and three sizes, small, medium, and large  The Verdant Garden copies didn't appear in defendant's 2009-2010 catalog, but reappeared in defendant's 2010-2011 catalog under the name "Cancun dress" displayed in a single color, black, without specifying sizes, although the order form asked the buyer to specify a size.  Both catalogs indicated that the "Miami knit dress" and/or the "Cancun dress" could be ordered in other unspecified colors. Defendant's  2008-2009, 2009-2010. Defendant re-activated her kinibikini URL in the fall of

ORIGINAL                                                                                                                         ORIGINAL

2015 and the various catalogs are presently online at **http://kinibikini.wix.com/kini-bikini**. Defendant also listed for sale both the "Miami knit dress" on the Kyna Treacy Facebook page, and the "Cancun dress" on the Kini Bikini Facebook page, both of which are still on line.

Defendant claims in this lititation that she only sold six copies of Verdant Garden, apparently under the name "Miami knit dress." In her separate trial setting statement, defendant does not acknowledge offering any copies under the name "Cancun dress." However, the "Miami knit dress" was featured in a December 2008 interview by the Sunshine Coast Daily Online newspaper as one of three crochet items that defendant had ordered from a Chinese manufacturer and offered for sale as indicated in the photos defendant supplied to the Daily Online. In the interview, defendant explained that the minimum order was 60, but she was now ordering in the "thousands." Based on plaintiff's knowledge of the fashion industry and minimum orders, a "minimum order" corresponds to one style, one size, and one color run, since each size requires a separate pattern. Thus, at three colors and three sizes, at a minimum order of 60, defendant would have ordered a minimum of 540 copies of the "Miami knit dress." [1]

In April of 2009, in response to plaintiff's notice of infringement, defendant disclosed to plaintiff that she had acquired the copies from a Chinese company called "zhangqing*bao*" or "zhangqing*biao*", that she did not know the address of the company, and that the company did not have a website. After defendant was served with the complaint in October of 2015, she filed a pro se answer in March of 2016 in which she disclosed that she had acquired the copies online from a Chinese fashion company, "crochetfashion.net." According to ICANN WHOIS, an internet database of domain name, the company has an address in Guangzhoushi, China. "Zhang Qingbao" is not the name of a company at all, but the name of a person associated with

---

[1] As for the "Cancun dress", the catalog gap from 2008-2009 and 2010-2011 suggests that the "Miami knit dress" was sold out and that defendant placed a new order for the "Cancun dress." Assuming it was only available in one color, black, and the minimum order stayed the same, defendant would have ordered a minimum of 180 copies in the most popular color, black (three sizes.) It seems unlikely that the "Cancun dresses" in the 2010-2011 catalog were mere leftovers of unsold "Miami" dresses, since they would have been offered in the 2009-2010 catalog otherwise.

crochetfashion.net. Further research indicates that crochetfashion.net was indeed offering poor quality copies of the Verdant Garden narrow-skirt dress for apparent wholesale in 2008. However, the copies defendant marketed under the names "Miami knit dress" and "Cancun dress" appear to be much better copies of the Verdant Garden narrow skirt dress than the ones depicted on crochetfashion.net.  From 2009 to 2016, plaintiff conducted internet searches for a company called "zhangqingbao" or "zhangqingbiao" but was unable to find the company crochetfashion.net by such searches, nor was plaintiff able to find any information about anyone called "zhangqingbao" or "zhangqingbio" until 2018.

The principal factual issues in dispute are:

1. Whether the "Miami knit dress" and the "Cancun dress" are copies of the "Verdant Garden" narrow skirt dress.

2. How many copies defendant had reproduced.

3. How many copies defendant sold.

4. The manner in which defendant marketed the copies.

5. To what extent defendant prevented plaintiff from protecting her work by failing to disclose who was producing the copies when plaintiff served defendant with the notice of infringement.

6. To what extent defendant's having copies reproduced, and advertising / marketing such copies, resulted in similar copies becoming available from other suppliers.

7. To what extent plaintiff's reputation as a creator of wearable art and the reputation of "Verdant Garden" was damaged by defendant's having copies reproduced and marketed in a spandex stretch-crochet  fabric, when the original wearable art was created in a high quality cotton thread that would not deteriorate from repeated wearings as stretch fabric does.

Plaintiff seeks the following relief in her complaint:

a. A declaration that her copyright as to "Verdant Garden" (narrow skirt dreses) is valid, in effect, and prevails over any interest claimed in "Verdant Garden" by defendant.

b. A permanent injunction preventing defendant from infringing plaintiff's copyright in "Verdant Garden" in any manner, and from publishing, distributing, manufacturing, causing to

be manufactured, selling, marketing, or otherwise disposing of any textiles imprinted with the design copied from plaintiff's alleged copyrighted reproduction of a work of art, and requiring that defendant take down all postings of copies of Verdant Garden and publicly disclose that she did not design either the Miami knit dress or the Cancun dress.

c. Damages for infringement, which according to plaintiff, are calculated as follows, *at a minimum*, based on defendant's 2008 representations to the Sunshine Coast Daily Online: $1500 (Plaintiff's retail price for each "Verdant Garden"), multiplied by 540 (minimum order of individual copies of "Verdant Garden" assuming that defendant only ordered three colors and three sizes. This calculation assumes that defendant only ordered one minimum order of 60 items per size and color and that the "Cancun dress" listed in defendant's 2010-2011 catalog were mere unsold leftovers of the black versions of the "Miami knit dress" rather than a new order of the dresses, in black.  This also doesn't include damages to plaintiff's reputation or to the reputation of Hawaiian Delights Crochet Bikinis.

d. Statutory damages equal to the amount Defendant actually sold the infringing items for.

Defendant requests the following:

a. That Plaintiff take nothing on her claims; and

b. That Plaintiff's complaint be dismissed.

Defendant further states that she has never claimed any interest in "Verdant Garden," and therefore seeks no relief related to the ownership of "Verdant Garden."  Whatever name defendant used, she has publicly claimed that both the "Miami knit dress" and the "Cancun dress" are her own personal designs.

### 3. Legal issues.

### a. Enforceability.

Plaintiff and defendant dispute whether plaintiff has the right to bring an action to enforce her copyright absent registration. Defendant contends that plaintiff was required to register her copyright claim pursuant to 17 U.S.C. § 411, in order to bring a claim for copyright infringement under 17 U.S.C. § 501. Plaintiff contends that no such registration was required,

as the Verdant Garden narrow skirt dress is a work of art and as needlework-lace patterns. The court has previously ruled in plaintiff's favor in denying defendant's Rule 12(b) motion.

### b. Prima facie case of copyright infringement.

Plaintiff and defendant dispute whether plaintiff can prove a prima facie case of copyright infringement. Defendant contends that a prima facie copyright infringement claim has two elements: (1) ownership of a valid copyright, and (2) copying of fundamental, original elements of the work. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). Defendant contends that plaintiff cannot prove either of these elements. Defendant contends that plaintiff did not own a valid copyright for "Verdant Garden" because "Verdant Garden" is not eligible for copyright protection due to its alleged lack of originality. Defendant further contends that plaintiff cannot prove that defendant copied "Verdant Garden" because plaintiff cannot prove that there was a reasonable possibility that defendant had access to "Verdant Garden", nor that "Verdant Garden" and the dress defendant created were substantially similar. However, despite defendant's contentions, pictures of the the Verdant Garden narrow skirt were online as part of plaintiff's Hawaiian Delights Crochet Bikini website since 2003 and was available to anyone with internet access, and the court has previously ruled in plaintiff's favor in denying defendant's Rule 12(b) motion.

### c. Agreement not to infringe.

Plaintiff also claims that on April 13, 2009, defendant admitted that plaintiff had a copyright in her work of art, that defendant had unknowingly acquired copies of plaintiff's work of art, that defendant never intended to market or sell copies of plaintiff's work of art, and that defendant agreed not to offer or sell any further copies of plaintiff's work if plaintiff would not sue her. Plaintiff claims that she refrained from litigation until she discovered that defendant was still offering copies of her work for sale. Plaintiff further contends that defendant had no intention of honoring her agreement because she continued to market the copies under the name "Cancun dress" as late as 2011. Defendant originally contended in her March 30, 2016 pro se answer that her admission that she was only selling copies and her promise not to infringe is not enforceable because "Ms Miyaski an experienced paralegal bullied her response calculatviley

in order to try and get me to admit that the dresses were the same", apparently claiming that plaintiff coerced her in a calculated and vile manner into making such admissions and promises. Defendant now generally disputes enforceability.

### d. Statute of Limitations

Defendant continues to claim that plaintiff's claim of copyright infringement is barred due to the three-year statute of limitations provided for in 17 U.S.C. § 507. Plaintiff contends that her claim is not barred by the statute of limitations because the complaint alleges a continuing copyright violation, and because she did not discover the infringing activity until a date within the permissible three-year time period. Defendant contends that the complaint is barred by the statute of limitations because it was not brought within three years of the alleged copyright violation and because there was no "continuing copyright violation."  It should be noted that this issue was litigated and preliminarily resolved against defendant when the court denied defendant's motion to dismiss.

### 4. Motions

Defendant has filed two motions to dismiss under Rule 12(b). Defendant's first motion to dismiss was denied without prejudice in light of Plaintiff's First Amended Complaint filed on June 28, 2016 (Dkt. 93), and recycled as defendant's second motion to dismiss.  The second motion to dismiss, which raised all of the above legal contentions, was denied on October 18, 2017 (Dkt. 129).

### 5. Discovery

Non-expert discovery in this case has been completed.  Plaintiff anticipates obtaining an expert on fashion industry practices and minimum orders.

### 6. Settlement and ADR

The parties conferred on settlement early in this case, but were unable to reach a resolution.  Plaintiff offered to settle for $50,000 (less than 10% of the minimum damages mentioned above) along with defendant's publicly admitting that the copies of plaintiff's work marketed under the names "Miami knit dress" and "Cancun dress" was not defendant's.

Defendant declined to discuss a monetary settlement or offer any money at all, claiming that she is judgment-proof (both when pro se and when represented.)

At this time, the parties currently plan on participating in the Court's Early Neutral Evaluation Program ("ENE"). The parties are currently scheduled to participate in an ENE session on August 21, 2018. Plaintiff will again extend her offer to settle for $50,000 in hopes that this case can be resolved without further costs to the parties.

### 7. Bifurcation and Separate Trial of Issues

This doesn't appear to be an issue.

### 8. Trial

Plaintiff is willing to have the present action resolved by bench trial and expects trial will take at least three (3) days.

### 9. Scheduling

Plaintiff proposes that the Final Pretrial Conference take place in late November-December 2018, and that the trial take place in February 2019.

Dated: San Francisco, California, Monday, August 13, 2018.

_____
Paul McCarthy
Attorney for Plaintiff